IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DIANE STACKHOUSE,** | : CIVIL ACTION NO. 1:01-CV-2223 |
| Plaintiff | : (Judge Conner) |
| v. | : |
| **PENNSYLVANIA STATE POLICE** and **COMMONWEALTH OF PENNSYLVANIA,** | : |
| Defendants | : |

## MEMORANDUM

Presently before the court is plaintiff's motion for a new trial (Doc. 172). For the reasons that follow, the motion will be denied.

**I.   Statement of Facts**

Diane Stackhouse ("Stackhouse"), a Lieutenant with the Pennsylvania State Police ("PSP"), instituted the above-captioned case in November 2001, alleging claims of disparate impact, disparate treatment, and retaliation under Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e-2(a). Specifically, Stackhouse contended that PSP's promotions process from the rank of lieutenant to captain had a disparate impact on women, and that she was a victim of disparate treatment and of retaliation. In November 2004, summary judgment was granted in favor of defendants on the retaliation claim.

Prior to trial in September 2005, the court granted two motions *in limine* filed by PSP, relating to evidence of a discrimination charge filed with the Equal Employment Opportunity Commission ("EEOC") by a former PSP employee, and

to evidence of a report by Pennsylvania's Office of Inspector General ("OIG") detailing sexual misconduct at the Pennsylvania State Police. (See Docs. 153, 156.) Following four days of trial testimony the jury returned a verdict for defendants on Stackhouse's disparate treatment claim, and an advisory verdict for defendants on her disparate impact claim.[1] Although the findings of the advisory jury were not binding,[2] the court reviewed the evidence and testimony of record and agreed that plaintiff had failed to prove her disparate impact claim. Accordingly, an order was issued on October 4, 2005, granting judgment in favor of PSP on this claim. (See Doc. 175.)

Stackhouse's instant motion for a new trial argues that the court erred in excluding from trial evidence of the EEOC charge and of the OIG report. It also contends that the court erred in failing to instruct the jury on the "4/5" rule, and in instructing the jury on the burden of proof for a disparate treatment claim. The motion has been fully briefed by the parties and is ripe for disposition.

---

[1] See 42 U.S.C. § 1981a(a)(1), (c) (providing right to jury trial for disparate treatment cases and where compensatory or punitive damages, rather than equitable relief, is at issue); see also Pollard v. Wawa Food Market, 366 F. Supp. 2d 247, 254 (E.D. Pa. 2005) (noting no right to jury trial under disparate impact theory because it provides for equitable relief).

[2] See Wilson v. Prasse, 463 F.2d 109, 116 (3d Cir. 1972); see also 9 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2335 (2d ed. 1995) ("An advisory jury is an aid to the court in discharging its functions . . . . and it is in [the court's] discretion wholly whether to accept or reject, in whole or in part, the verdict of the jury.").

## II.   Discussion

Federal Rule of Civil Procedure 59 provides that a new jury trial may be granted "for any of the reasons for which new trials have heretofore been granted in actions at law." FED. R. CIV. P. 59. However, the court's power to grant a new trial is not unlimited, and may only be exercised "to prevent injustice or to correct a verdict that was against the weight of the evidence." Am. Bearing Co., v. Litton Indus., Inc., 792 F.2d 943, 948 (3d Cir. 1984); see also Olefins Trading, Inc. v. Han Yang Chem. Corp., 9 F.3d 282, 289 (3d Cir. 1993) (stating that district court may only grant new trial on weight of evidence "where a miscarriage of justice would result if the verdict were to stand"). When the exclusion of evidence is at issue, a new trial should be granted where "substantial errors" in the rejection of evidence occurred. Goodman v. Pa. Turnpike Comm'n, 293 F.3d 655, 676 (3d Cir. 2002). When a jury instruction is at issue, a new trial should be granted when the error is fundamental or may cause a miscarriage of justice. See Wagner by Wagner v. Fair Acres Geriatric Center, 49 F.3d 1002, 1018 n.17 (3d Cir. 1995).

### A.   Motions *in Limine*

Stackhouse argues that the court erroneously excluded evidence of the EEOC charge and the OIG report. With respect to the EEOC charge, Stackhouse contends that it was relevant to demonstrate that PSP would not promote qualified women, and should have been admitted to "establish[] that in the decades-long history of the State Police no woman" had been promoted to the rank of captain until the filing of this charge. (Doc. 176 at 14.)

The EEOC charge at issue was filed in the late 1980s by former PSP Major Kathryn Doutt ("Doutt").  (See Doc. 46, Ex. 6 at 13, 19-25.)  In 1988 Doutt earned the highest score on a PSP examination for promotion from the rank of lieutenant to captain.  (See Doc. 46, Ex. 6 at 19.)  Following the promotion of several of her colleagues Doutt requested a meeting with the then Commissioner of the State Police to discuss the prospects of her promotion.  (See Doc. 46, Ex. 6 at 19.)  When the Commissioner refused to meet with her Doutt filed a complaint with the EEOC.  (See Doc. 46, Ex. 6 at 19.)  Sometime thereafter Doutt received a promotion to the rank of captain, and her charge became moot.  (See Doc. 46, Ex. 6 at 21.)

Upon reviewing the facts and deposition testimony related to Doutt's EEOC charge, this court concluded that exclusion of the evidence was warranted.  (See Doc. 153.)  The charge was filed nearly a decade before the facts giving rise to Stackhouse's claims, and by a former PSP employee not a party to this case.  It did not pertain to the incidents at issue here, but to the hiring practices of a former PSP Commissioner not a party to this case.  The allegations of the charge were never litigated or substantiated, and it was, in fact, voluntarily withdrawn.  Given these circumstances, any *arguable* probative value of this evidence was substantially outweighed by the danger of unfair prejudice to defendants, confusion of the issues, and misleading the jury.  See FED. R. EVID. 403.  The suppression of this evidence was not in error, and the court will decline to grant a new trial on this basis.

The court will also decline to grant a new trial based upon the exclusion of the OIG report from evidence. This report was prepared in September 2003 following a three month investigation into allegations of sexual harassment and sexual misconduct by certain members of PSP. (See Doc. 88, Attach. 1 at i.) According to the report, its purpose was to "establish the groundwork for changes and improvements [within PSP] and to deter and prevent sexual harassment and misconduct." (Doc. 88, Attach. 1 at i.) It focuses on internal hiring, complaint, and disciplinary procedures. (See Doc. 88, Attach. 1 at 6.) It is based largely upon executive orders and management directives, as well as PSP's internal records related to complaints of and investigations into sexual harassment and misconduct from the years 1995 to 2003. (See Doc. 88, Attach. 1 at 6-7.) It draws heavily upon the facts and circumstances leading to the arrest and incarceration of former PSP Trooper Michael K. Evans, as well as upon pleadings and discovery produced in various law suits commenced against Evans. (See Doc. 88, Attach. 1 at 6.)

The court noted the existence of the OIG report in an opinion (Doc. 117) addressing a motion for reconsideration of the denial of summary judgment. Thereafter, scrutinized under the bright light of a motion *in limine*, the court found that the report's probative value was substantially outweighed by the danger of unfair prejudice and misleading the jury. (See Doc. 156). The report squarely addresses a controversial subject and catalogs heinous acts committed by specific individuals. The report does not address discrimination in the promotions process. It does not impute any misconduct on the parties or decisionmakers at issue in this

case and, to the contrary, recognizes that "the vast majority of men and women who work for the State Police have never engaged in such misconduct." (Doc. 88, Attach. 1 at 8.) Exclusion of this evidence at trial was not a "substantial error," but a careful weighing of the facts at issue in this case, the evidentiary value of the report, and the likelihood of misleading—and indeed, inflaming—the jury. See FED. R. EVID. 403. Accordingly, the motion for a new trial on this ground will also be denied.

### B.    Jury Instructions

With respect to the jury instructions, Stackhouse contends that the court erred in refusing to give the jury her proposed charge on the "4/5" rule, and erred in giving instructions on her burden of proof with respect to the disparate treatment claim. (Doc. 176 at 8.)

The 4/5 or "80%" rule is a method of measuring the impact of a selection process on a class of people. Under the 4/5 rule an employer's selection criterion has an adverse impact, for purposes of plaintiff's prima facia case, where members of a protected group are selected at a rate less than four-fifths (80%) that of their allegedly preferred counterparts. See Vulcan Pioneers, Inc. v. N.J. Dep't of Civil Serv., 832 F.2d 811, 813-814 & n.3 (3d Cir. 1987); see also Spence v. City of Pila., 147 F. App'x 289, 290-91 & n.1 (3d Cir. 2005); 1 BARBARA LINDEMANN & PAUL GROSSMAN, EMPLOYMENT DISCRIMINATION LAW 92 (3d ed. 1996). The EEOC has implemented regulations specifically adopting the 4/5 rule as evidence of disparate impact. See 29 C.F.R. § 1607.4(d).

As previously discussed, the disparate impact claim in this case was determined by the court—not the jury—and the rule was not the topic of any testimony presented at trial. Hence, an instruction on the 4/5 rule would have been superfluous and likely confusing to the jury. Although Stackhouse now contends that the jury could have used the rule to "circumstantially establish an intentional *disparate treatment*," the instruction at issue was clearly limited to her *disparate impact* claim, as Stackhouse proposed the following:

> An accepted standard of disparity comes from the EEOC Uniform Guidelines on Employee Selection procedures, 29 CFR section 1607.4(D) (1993). This regulation provides that a selection rate of the protected class which is less than 4/5 (80%) of the selection rate of the group with the highest passing rate is *generally held to be evidence of an adverse impact*.

(Doc. 146 at 27) (emphasis added).[3] Withholding the instruction was not in "fundamental error," and did not result in a "miscarriage of justice." Accordingly, the court will not order a retrial based upon this issue.

The court will also decline to order a new trial based upon the instructions given to the jury with respect to the burden of proof required to succeed on a disparate treatment claim. The Third Circuit Court of Appeals has adhered to a distinction between "pretext" cases, in which the employee asserts that the employer's justification for an adverse action is false, and "mixed-motives" cases, in

---

[3] Indeed, this proposed instruction was consistent with Stackhouse's prior treatment of the rule: her brief in opposition to summary judgment limited its discussion of the 4/5 rule to the disparate impact claim (see Doc. 90 at 12-13), as did the report of Stackhouse's expert witness, Dr. Brasher (see Doc. 54 at "Brasher Declaration").

which the employee asserts that both legitimate and illegitimate motivations played a role in the action.  See Watson v. S.E. Pa. Transp. Auth., 207 F.3d 207, 214-15 & n.5 (3d Cir. 2000); see also Desert Palace, Inc. v. Costa, 539 U.S. 90, 94 n.1, 98-100 (2003) (stating that, in mixed-motive cases, plaintiff must show that distinction was a "motivating factor" but declining to address whether similar standard applies in pretext case).  A pretext theory of discrimination is typically presented by way of circumstantial evidence, from which the finder of fact may "infer the falsity of the employer's explanation [to] show bias."  Starceski v. Wastinghouse Elec. Corp., 54 F.3d 1089, 1097-98 (3d Cir. 1995).  A mixed-motive theory of discrimination, however, is usually put forth by presenting evidence of "conduct or statements by persons involved in the decisionmaking process that may be viewed as directly reflecting the alleged discriminatory attitude."[4]  Griffiths v. CIGNA Corp., 988 F.2d 457, 470 (3d Cir. 1993), overruled on other grounds by Miller v. CIGNA Corp., 47 F.3d 586 (3d Cir. 1995).

Whether a case is classified as one of pretext or mixed-motive has important consequences on the burden that a plaintiff has at trial, and hence on the instructions given to the jury.  The former requires evidence that discriminatory

---

[4] See also Armbruster v. Unisys Corp., 32 F.3d 768, 778 (3d Cir. 1994) (stating that in mixed-motive cases "the evidence the plaintiff produces is so revealing of discriminatory animus that it is not necessary to rely on any presumption from the prima facie case [as is necessary in a pretext case] to shift the burden of production."); Starceski, 54 F.3d at 1097 (stating that direct evidence "leads not only to a ready logical inference of bias, but also that to a rational presumption that the person expressing the bias acted on it.").

animus was the "determinative factor" in the adverse action; the latter requires only that it was a "motivating factor" in the decision.  <u>Watson</u>, 207 F.3d at 214-15 & n.5.  A plaintiff may change her or his theory of discrimination at any time during the case, but whether it is a pretext or a mixed-motive case is a question of law for the court to decide "at some point in the proceedings prior to instructing the jury." <u>Starceski</u>, 54 F.3d at 1098; <u>see also</u> <u>id.</u> (holding that deciding at last minute to give jury a mixed-motive instruction did not constitute error).

In the case *sub judice*, the court initially—and inadvertently—instructed the jury with both mixed-motive and pretext language:

> Plaintiff is not required to prove that her sex was the sole motivation or even the primary motivation for defendants' decision.  Rather, plaintiff need only prove that her sex played a determinative or motivating part in defendants' decision, even though other factors may also have motivated defendants.  *That is, plaintiff must demonstrate that if she were a man and all other circumstances were the same, she would have been promoted.*

Following a short deliberation the jury presented the above inconsistency to the court in the form of a written statement:  "[The] [j]ury wants more explanation, [it] feel[s that] these two statements say or mean opposite things.  Please clarify."  (<u>See</u> Doc. 168.)[5]  After argument on the appropriateness of the language and reviewing the testimony and evidence presented by Stackhouse during trial, the court concluded that plaintiff's case-in-chief was based entirely upon tenuous, circumstantial evidence.  There was no direct evidence that Stackhouse's sex

---

[5]Pursuant to the court's standard practice, the court provided the jury with a verbatim text of its verbal instructions for use during deliberations, which likely heightened the jury's scrutiny of this particular instruction.

played any role in PSP's decision not to promote her.  Accordingly, the court summoned the jury back to the courtroom and instructed the jurors as follows:

> Ladies and gentlemen of the jury, you have requested clarification of one aspect of the court's charge.  Upon review of the matter I believe that you have appropriately raised an issue that is the subject of confusion and has been the subject of confusion in other matters.  In this particular instruction there is some inconsistency, and I am now about to give you what I believe to be the overriding instruction as it relates to the issue of a disparate treatment claim.
>
> You should be advised that the plaintiff must prove not that the illegitimate factor was the sole reason for the decision, but that the illegitimate factor—and by "illegitimate factor" I'm referring to the plaintiff's sex—but that the illegitimate factor was a determinative factor in the adverse employment decision.  That is, that but for the protected characteristic the plaintiff would have ben promoted.
>
> To the extent that the instructions refer to the requirement that her sex . . . does not even have to be the primary motivation for the defendant's decision, I believe that instruction was in error.  In this case you are instructed that the plaintiff must demonstrate that her gender was the determinative factor in the defendants' decision not to promote her.

The verdict form was corrected to reflect this change and reissued to the jury.  (See Doc. 165.)  Less than two hours later a defense verdict was returned.

Stackhouse argues that the court erred in reinstructing the jury under this pretext theory of discrimination, contending that although she did not have any direct evidence of discrimination, direct evidence is not needed for a mixed-motive instruction.  The court finds this argument unpersuasive.

While direct evidence is not a prerequisite for a mixed-motive instruction, see Desert Palace, Inc. v. Costa, 539 U.S. 90, 99-101 (2003), it does not follow that a mixed-motive instruction must be given in every case.  See Keelan v. Majesco

Software, Inc., 407 F.3d 332 (5th Cir. 2005) (holding that "Desert Palace had no effect on pretext cases"); cf. Monaco v. Am. Gen'l Assur. Co., 359 F.3d 296, 300 & n.5 (3d Cir. 2004) ("Inasmuch as [plaintiff] attempted to prove his [ADA] case through the use of indirect evidence, our analysis will focus on the burden-shifting framework of [a pretext case]."). In the instant matter, the court ultimately, and correctly, determined that a pretext instruction was consistent with the evidence of record and plaintiff's case-in-chief. Over the four-year course of these proceedings Stackhouse presented to the court a garden-variety pretext case. The initial and amended complaints set forth vague allegations that the promotions process at issue was inadequate and favored men over women. (See Docs. 1, 60.) Stackhouse's brief in opposition to summary judgment averred only that she was the victim of disparate treatment because "she ha[d] been passed over for promotion in favor of male candidates who are less qualified." (Doc. 90 at 6.) She relied on circumstantial evidence entirely to bolster this claim: the Doutt declaration, deposition testimony regarding the promotions process, the "institutional history and attitudes" of PSP, and the statistical evidence proffered for her disparate impact claim. (Doc. 90 at 30-31.) Neither at summary judgment nor at trial did Stackhouse offer any direct evidence that she was discriminated

against because of her gender.[6]  In the final analysis, there was simply no basis upon which the court could justify a mixed-motive instruction.

Regardless of whether a court provides a pretext or mixed-motive instruction, a plaintiff must still "present sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that . . . [sex] was a motivating factor for any employment practice." Desert Palace, 539 U.S. at 101.  In this case Stackhouse failed to demonstrate, with either direct or circumstantial evidence, that her sex was a motivating factor in the decision not to promote her.  Nor did she present any evidence to cast doubt on PSP's reasons for failing to promote her.[7] See McClam-Brown v. Boeing, 142 F. App'x 75, 77 (3d Cir. 2005) (holding that whether jury instruction should have been mixed-motive or pretext was moot where there was no evidence to refute non-discriminatory reasons for adverse employment decision).  Indeed, nothing presented at trial plausibly suggested that the proffered reasons for Stackhouse's rejection were fabricated or that PSP was

---

[6] Indeed, Stackhouse's method of surviving summary judgment on this claim was to argue that PSP's "alleged legitimate nondiscriminatory reasons for selecting the persons promoted instead of plaintiff are pretextual, or in the alternative there is a genuine issue of material fact as to whether or not they are pretextual." (Doc. 90 at 32.)

[7] Stackhouse contends that statistical evidence presented at trial in support of her disparate impact claim also constitutes circumstantial evidence of disparate treatment.  As discussed in the court's opinion of October 4, 2005 (Doc. 173), in which the court directed that judgment be entered in favor of defendants on the disparate impact claim, the statistical evidence failed to demonstrate any significant disparity in the promotion rates at issue.  (See Doc. 173 at 5-6.)

actually motivated by discriminatory animus.  Accordingly, the motion for a new trial on this issue will be denied.

## III.     Conclusion

Because Stackhouse has failed to demonstrate that exclusion of evidence at trial was in substantial error, or that the instructions given to the jury were in fundamental error or created a miscarriage of justice, the court will deny Stackhouse's motion for a new trial.  An appropriate order will issue.

    /s/ Christopher C. Conner  
CHRISTOPHER C. CONNER  
United States District Judge

Dated:       March 14, 2006

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DIANE STACKHOUSE,** | : | CIVIL ACTION NO. 1:01-CV-2223 |
| **Plaintiff** | : | (Judge Conner) |
| v. | : | |
| **PENNSYLVANIA STATE POLICE** and **COMMONWEALTH OF PENNSYLVANIA,** | : | |
| **Defendants** | : | |

## **ORDER**

AND NOW, this 14th day of March, 2006, upon consideration of plaintiff's motion for new trial (Doc. 172), and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that the motion (Doc. 172) is DENIED.

                                      /s/ Christopher C. Conner
                                    CHRISTOPHER C. CONNER
                                    United States District Judge